**UNITED STATES of America, Plaintiff,**

v.

**Miguel MUNOZ, a/k/a "beeper", Rodolfo Rodriguez, Enrique Houellemont, a/k/a "Ereppa", Daniel Bretton, a/k/a "Raoul", Cristo Rey Ramirez–Pena, a/k/a "Bacalao", Victor Alberto Gil, a/k/a "Vitico", Nelson Omar Tabar–Laro, Hector Garcia, a/k/a "Jabao", Pedro Pizzarro, a/k/a "Bolin", and Marilyn Montalvo, a/k/a "Ramona Munoz", Defendants.**

**No. S 90 Cr. 15 (RPP).**

United States District Court,
S.D. New York.

Oct. 4, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Patrick Fitzgerald and Karen Patton, Asst. U.S. Attys., for Government.

Orden & Cohen, New York City by Joel Cohen, for defendant Rodolfo Rodriguez.

Joy L. Vastola, New York City, for Enrique Houellemont.

Martin Geduldig, Hicksville, N.Y., for Daniel Bretton.

Harriet B. Rosen, New York City, for Cristo Rey Ramirez–Pena.

Mordkofsky, Goldstein & Weinstein by Barry Weinstein, Bronx, N.Y., for Victor Alberto Gil.

Michael Bachner, New York City, for Nelson Omar Tabar–Laro.

Thomas D. White, New York City, for Hector Garcia.

Charles Brown, New York City, for Pedro Pizzarro.

Goltzer & Adler, New York City by Charles Adler, for Marilyn Montalvo.

Ivan S. Fisher, New York City, for Miguel Munoz.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Rodolfo Rodriguez ("Rodriguez") moves to suppress statements made at the place of his arrest and later at the offices of the Federal Bureau of Investigation ("FBI"), pursuant to Rule 12(b)(3) of

the Federal Rules of Criminal Procedure. This Court held an evidentiary hearing on the issue of the voluntariness of the statements, on August 28 and 30, 1990. The Government called as a witness Special Agent Anibal Molina of the FBI ("Agent Molina"). The Government opposes only that part of the motion which seeks to suppress the post-arrest statements made at the FBI offices. For the reasons set forth below, the defendant's motion to suppress those post-arrest statements is denied. On the basis of the hearing, the Court finds the following facts.

## BACKGROUND

Rodriguez was arrested on December 26, 1989, in connection with the alleged kidnapping of Raphael Gonzales (a/k/a "Ralph") by a cocaine distribution ring. At the time of his arrest, the whereabouts of the kidnapping victim was still unknown. Rodriguez was arrested in a car with Gonzales' brother, who had been negotiating Gonzales' release. He was ordered out of the car by FBI agents with guns drawn, handcuffed and placed on the ground. Moving Affidavit of Rodolfo Rodriguez, at 1. While Rodriguez was lying on the ground with his hands cuffed behind him, Agent Molina advised him of his *Miranda* rights in Spanish and asked him if he understood. Rodriguez said "Yes." Transcript of August 28, 1990 Hearing, at 6. (Defendant denies having been read his rights at the arrest scene. Moving Affidavit of Rodolfo Rodriguez, at 1). Agent Molina asked him if he wanted to talk and Rodriguez answered "I have nothing to say." Agent Molina then asked him "Where is Ralph?" (referring to Raphael Gonzales) and Rodriguez said he did not know. Transcript of August 28, 1990 Hearing, at 7. This was the extent of any questioning at the scene of arrest.

Rodriguez was then taken to the FBI office, where, two hours after the arrest and the preceding conversation, Agent Molina and two other agents met with Rodriguez. Agent Molina then told Rodriguez that they were about to question him in connection with the kidnapping and informed him again of his *Miranda* rights.

Molina asked Rodriguez if he understood and again Rodriguez answered that he did. Rodriguez declined to sign the Advice of Rights Form, claiming an inability to read Spanish very well, but stated he would answer questions orally. Transcript of August 28, 1990 Hearing, at 10–11, 14–15. According to Agent Molina's uncontradicted testimony, Rodriguez never indicated that he wanted to speak to an attorney or did not want to continue talking to the agents. Transcript of August 28, 1990 Hearing, at 15–16. There was no lengthy interrogation followed by a confession or statement. Agent Molina testified that Rodriguez spoke freely. Rodriguez agrees in his moving affidavit that he was given *Miranda* warnings before the questioning at the FBI office. Moving Affidavit of Rodolfo Rodriguez, at 2.

In his moving affidavit, Rodriguez claims that his later statements were made because he had already "said things" at the scene of arrest. The claim is that because he believed the earlier statements might have been incriminatory, his later statements were not voluntary in that they were the fruits of a statement illegally obtained at the arrest scene. Moving Affidavit of Rodolfo Rodriguez, at 2. Rodriguez also claims that the further questioning at the FBI office violated his right to remain silent which he had invoked earlier and that he did not fully understand his rights because they were explained to him in Spanish, not French.

## DISCUSSION

▮▮▮▮ The evidence shows no basis for suppressing Rodriguez' statements on the ground that he was told of his rights in Spanish and did not fully understand them. The record shows that Rodriguez is conversant in Spanish, that he repeated more than once that he understood his rights, and that he never asked for another interpreter or for any conversation to take place in any other language. Agent Molina was not obligated to investigate which language, of many potential choices, a defendant preferred as long as he inquired and was satisfied as to the defendant's ability to

understand his rights in the language in which they were explained to him. There is no obligation to use a suspect's native language, as long as he has sufficient command of the language in which he was warned to waive his rights intelligently and knowingly. *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2nd Cir.1989).

■ Also, the later questioning at the FBI offices did not violate his right to remain silent as invoked by his statement at the scene of the arrest that he "had nothing to say." As the Second Circuit recently held, "[q]uestioning can be resumed after fresh *Miranda* warnings are given and the right to remain silent is otherwise scrupulously honored, for example, by renewing the questioning only after the passage of a significant period of time and by limiting the renewed questioning to a different subject matter than the original interrogation." *Campaneria*, 891 F.2d at 1021 (citations omitted).

In general, "[o]nce an accused in custody unequivocally invokes the right to remain silent, interrogation must ordinarily cease." *Id* (citations omitted). This rule, however, "is not a *per se* prohibition against all further interrogation." *Id.* It is meant to overcome the inherently coercive aspects of custodial interrogation and to prevent overbearing or relentless questioning. *Id* at 1020, 1021. *See also Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). As the Supreme Court pointed out in *Mosley*, "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." *Id* at 102, 96 S.Ct. at 326. See also *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (procedural safeguards of *Miranda* should not hamper the police from following "legitimate instincts" to protect public safety); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (question

of waiver of rights in accord with *Miranda* is not one of form but whether defendant in fact knowingly and voluntarily waived his rights).

■ The circumstances of defendant's arrest and confinement were not sufficient to cause coercion to be inherent in any subsequent interrogation. In support of his claim to the contrary, the defendant cites *United States v. Brown*, 557 F.2d 541 (6th Cir.1977), which is distinguishable on the facts. In *Brown*, the suspect was interrogated in the back seat of a patrol car having been captured in flight by police officers who were responding to a call that other police officers were being fired upon. The suspect was, at the time, the subject of a massive manhunt in connection with an earlier killing of a police officer. Testimony indicated that the defendant in *Brown* was subdued by an unusually violent arrest, far beyond the degree of force used to arrest this defendant. The suspect in *Brown* also claimed that he had been struck by one of the interrogating officers at the time he made the incriminating statements and that he was threatened with further beatings, although the district court found that he was not beaten. *Id* at 544–48.

The Sixth Circuit emphasized that no one of these factors was determinative in deciding whether or not the confession was voluntary, but that these and other factors should be weighed together, "[u]nder the totality of circumstances," to decide if the suspect's statements were made voluntarily and rationally. *Id* at 548. Weighing all the circumstances of the present defendant's arrest and questioning, this Court finds that Rodriguez' statements during the subsequent questioning at the FBI offices were made voluntarily and after rational reconsideration of his own interests. There was a sufficient change of scene and passage of time between the first questioning and the second. There is no allegation of physical abuse in connection with the arrest. The atmosphere at the FBI office was not such as to overbear the suspect's will to remain silent or wear down the defendant's resistance. FBI personnel

were careful to repeat to the suspect the full catalogue of his rights, ascertaining scrupulously that he had understood them.

To suppress these post-arrest statements would unnecessarily hamper law enforcement officials in situations where they arrest a group of suspects and one or more of those suspects declines to answer questions at the scene of the arrest but in less public circumstances is willing to talk. There will be many occasions when a suspect will not want to talk with police officers within view or hearing of his fellow suspects but will be willing to answer questions once he is removed from the pressure of their presence. This Court finds that the agents in this case fulfilled their responsibility to advise the defendant of his rights and honored his right to remain silent, taking into account all the circumstances and facts of this case.

■ Defendant's refusal to sign the waiver of rights form does not automatically render the subsequent questioning improper. It may be one of the circumstances which a court will take into account in deciding whether a defendant made statements voluntarily, but an informed, voluntary, *Miranda* waiver of rights does not have to be written to be effective. *Butler, supra*, at 373, 99 S.Ct. at 1757. Nor does a refusal to sign the form automatically indicate a refusal to waive the right to remain silent. *Butler, supra*, at 373, 99 S.Ct. at 1757. *U.S. v. Boon San Chong*, 829 F.2d 1572 (11th Cir.1987). The Seventh Circuit has also held that a refusal to sign the waiver of rights form does not make an oral statement inadmissible, as long as the suspect understood his rights. *U.S. v. Kord*, 836 F.2d 368 (7th Cir.1988), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988). In that case, with facts similar to the present case, when the defendant refused to sign the form, the police officer who had given him the *Miranda* warnings went over them again orally and asked him again if he understood. *Id* at 374–75. The defendant said that he understood and was willing to talk but that he didn't want to sign anything. *Id.*

Here, Agent Molina also read the *Miranda* rights form to the defendant, asking after each sentence whether the defendant understood. The only request the defendant made was for Agent Molina to repeat one sentence, which the agent did. Transcript of August 28, 1990 Hearing, at 29–30. This specific request indicates that the defendant did understand the form, well enough to choose one section and ask to have it repeated, after which he acknowledged he understood it. Rodriguez said that he didn't want to sign it because of an inability to read, not to understand, the rights and waiver form and its substance. The defendant's oral waiver of his rights was effective, considering all the circumstances of the case. Agent Molina's conduct demonstrated consideration of the defendant's understanding his rights, not an attempt to skirt them.

■ Defendant also alleges in his affidavit that he was not given *Miranda* warnings at the arrest scene and that as a result, any subsequent statements he made should be suppressed as the fruits of illegally obtained statements. There is not sufficient basis for such a claim. Even if the defendant had not been warned at the earlier questioning, this alone would not make his subsequent statements inadmissible, as long as the later statements were preceded by a full *Miranda* warning. *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Defendant cites *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), in support of his claim. *Wong Sun* doctrine involves evidence or confessions obtained through a search in violation of the Fourth Amendment, not the procedural *Miranda* violation alleged here. *Elstad, supra*, at 305–07, 105 S.Ct. at 1290–92. Furthermore, the record shows nothing to indicate that the defendant said anything at the arrest scene other than what Agent Molina reports: "I have nothing to say" and "I don't know." The defendant claims only that he answered some questions but does not allege any more than the agent testified. These statements hardly taint the later questioning to such a degree that the later statement, obtained after an undisput-

ed *Miranda* warning, should be suppressed. See *Elstad, supra,* at 308–11, 105 S.Ct. at 1292–94.

## CONCLUSION

The defendant made a knowing, voluntary and intelligent waiver of his right to remain silent. Any statements he made at the arrest scene, under these facts, did not taint the later questioning such that the subsequent statement should be suppressed. The defendant's motion to suppress the subsequent statement is denied.

IT IS SO ORDERED.