UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Rosario GARIBAY, Jr.,
Defendant–Appellant.

No. 96–50606.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1997.

Decided May 5, 1998.

4.  *See* Voltaire, *Candide* (W.W. Norton & Co.    1966).

William W. Brown, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant.

G. David Hackney, Assistant United States Attorney, San Diego, California, for plaintiff-appellee.

Before: PREGERSON and HAWKINS, Circuit Judges, and WEINER, District Judge.*

PREGERSON, Circuit Judge:

Jose Rosario Garibay, Jr. appeals his convictions by a jury for importing marijuana in violation of 21 U.S.C. §§ 952 and 960 and for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Garibay asserts that in denying his motion to suppress the district court erred (1) in finding that he had waived his *Miranda* rights before making inculpatory statements to United States Customs Agents; and (2) in denying his request for a downward departure for acceptance of responsibility.

In reviewing the totality of circumstances in which Garibay was interrogated, it is clear that he was not aware of the nature of the constitutional rights he was waiving, and that the district court clearly erred in finding that he knowingly and intelligently waived his *Miranda* rights. Accordingly, we hold that the district court erred when it failed to suppress Garibay's inculpatory statements

---

* The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

and allowed them to go to the jury. We also hold that absent Garibay's incriminating statements obtained in violation of his *Miranda* rights, the evidence before the jury was insufficient to support his convictions. Therefore, we reverse and remand for proceedings consistent with this opinion.[1]

## I

On December 15, 1995, Jose Rosario Garibay, Jr. attempted to drive into the United States across the U.S.-Mexico border at the Calexico Port-of-Entry. A United States Customs Inspector asked Garibay, in Spanish, to open the trunk of the vehicle. Detecting a silicone odor emanating from the trunk, the Inspector directed Garibay to the Secondary Inspection Lot. A closer inspection of the vehicle revealed a depth-discrepancy in the trunk. The trunk was drilled. The drill bit came out with a green leafy substance that field-tested positive for marijuana. Fifty-five packages of marijuana, weighing approximately 138.65 pounds were removed from beneath the trunk floor. Garibay was arrested and placed in a holding cell.

About an hour later, United States Customs Agents Joseph William Burke and Jennifer Holden questioned Garibay in English. Agent Burke asked Garibay in English if he understood English, to which Garibay responded "yes." Agent Burke then orally read in English Garibay's constitutional rights, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630-31, 16 L.Ed.2d 694 (1966). Garibay indicated that he understood. During the interrogation, Garibay made incriminating statements.[2] He moved to suppress those statements on the ground that he did not understand the nature of the rights he was waiving because of his limited-English skills and low mental capacity. The district court held an evidentiary hearing, and found that the waiver was

knowing and intelligent. Garibay proceeded to trial and was convicted on all charges.

## II

### A.  Waiver of *Miranda* Rights

#### 1.  Standard of Review

■ We review for clear error a district court's finding that a defendant knowingly and intelligently waived his *Miranda* rights. *See United States v. Cazares*, 121 F.3d 1241, 1243 (9th Cir.1997).

#### 2.  Requirements of a Valid Waiver

■ For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Binder*, 769 F.2d 595, 599 (9th Cir.1985) (citing *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630-31). A valid waiver of *Miranda* rights depends upon the "totality of the circumstances including the background, experience, and conduct of defendant." *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir.1986).

■ There is a presumption against waiver. *See id.* at 752. (citing *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1966)). The prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the "totality of the circumstances," the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421,

---

1. In light of our ruling on the *Miranda* issue, there is no need to reach the question whether the district court erred in failing to adjust Garibay's sentence downward for acceptance of responsibility.

2. Initially, Garibay said he had bought the car in Mexico from a man he did not know. Subsequently, he admitted that a man he did not know

gave him $100 cash to drive the vehicle across the U.S.-Mexico border and leave it at a Jack-in-the-Box restaurant in Calexico, California. The government contends that Garibay was arrested with $106 dollars in his pocket. The police report, however, reports Garibay as having only $20 dollars on his person at the time of his arrest.

106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). The government's burden to make such a showing "is great," and the court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir.1984) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

### 3. Analysis

■ Garibay challenges the finding that he validly waived his *Miranda* rights because he was not aware of the nature of the constitutional rights he was abandoning. Specifically, Garibay contends that he did not understand Agent Burke's recitation of his rights in English because his primary language is Spanish and he has a low verbal IQ. Upon review of the record, we conclude that the prosecution did not meet its burden of proving that Garibay knowingly and intelligently waived his *Miranda* rights.[3] *See Connelly*, 479 U.S. at 168, 107 S.Ct. at 522.

■ In determining whether a defendant knowingly and intelligently waived his *Miranda* rights, we consider, as one factor, any language difficulties encountered by the defendant during custodial interrogation. *See United States v. Heredia–Fernandez*, 756 F.2d 1412, 1415 (9th Cir.1985) (holding that "language difficulties may impair the ability of a person in custody to waive [his *Miranda* ] rights in a free and aware manner"). In finding that Garibay was proficient in English, the district court relied on the following: (1) Garibay allegedly declined the agents' offer to be questioned in Spanish; and (2) Garibay attended high school in California and opted for an English-only curricu-

lum. But a review of the record reveals that the district court incorrectly stated the facts supporting its conclusion and, as a result, clearly erred in concluding that Garibay's English-language skills were sufficient for him to understand and waive his constitutional rights.

First, contrary to the district court's conclusion, Agent Burke did not offer Garibay the option of conducting the interrogation in Spanish, nor did Garibay decline such an offer.[4] Rather, Agent Burke questioned Garibay in English and assumed that Garibay was sufficiently proficient in English to understand and waive his *Miranda* rights without the assistance of a Spanish-speaking officer.[5] Agent Burke also admitted that he had to rephrase questions when Garibay did not seem to comprehend what was said to him. Although Spanish-speaking agents were available at the time of Garibay's arrest and custodial interrogation, Burke did not enlist those agents to assist him in questioning Garibay.

Second, the record clearly indicates that Garibay's primary language is Spanish and he understands only a few things in English. Garibay attended a U.S. high school where he received English instruction and received D+ grades in eleventh and twelfth grade English. These grades do not support a finding that he is sufficiently proficient in English to have waived his *Miranda* rights. Garibay did not graduate from high school. According to the presentence report, Garibay received the passing grades in English because those classes were taught using Spanish. Moreover, a probation officer reported that several independent sources in the community told him that "they did not believe he

---

**3.** In denying Garibay's motion to suppress, the district court concluded that Garibay failed to show "that *he* is unable as a matter of law to knowingly and intelligently waive his rights" (emphasis added). This statement implies that the district court incorrectly placed the burden of showing an invalid waiver on Garibay.

**4.** The district court erroneously found that the officers who interrogated Garibay "were credible when they offered him the chance [to conduct the interrogation] in Spanish ... and he said, no, in English." When asked if he ever offered Garibay the option of using Spanish, Agent Burke did not say "yes" but rather stated "I-basically, when

asked him [in English] if he understood English and he stated yes, from that point on, we went ahead and conducted it in English."

**5.** At the suppression hearing, Dr. Beatrice Heller testified that Garibay told her that, after he was arrested, a female agent "talked to him in Spanish and asked him if he preferred English or Spanish, Garibay said Spanish." According to Dr. Heller, Garibay also told her that during the interrogation "whenever he tried to elaborate on his answers, using a lot of Spanish he was told by [Agent Burke] to just say yes or no."

[Garibay] could speak English except for a few words." In addition, with the exception of Agent Burke, every witness at the suppression hearing testified that at Garibay's request they would always communicate with him in Spanish. These witnesses include Garibay's former high school counselor, Garibay's former football coach, the clinical psychologist who examined Garibay, and the probation officer who prepared Garibay's pre-sentence report.

Agent Burke, however, testified that Garibay indicated that he understood English. But Garibay's former high school football coach testified that when under stress and interacting with persons of authority, Garibay often claimed to understand English and gave the appearance of comprehending English, when in fact he did not understand what was being said to him. A fair reading of the record does not support a finding that Garibay understood his constitutional rights to remain silent and to have the assistance of counsel. Nor does the record support a finding that Garibay understood that he had the option to knowingly and intelligently waive those rights.

■ A defendant's mental capacity directly bears upon the question whether he understood the meaning of his *Miranda* rights and the significance of waiving his constitutional rights. *See Derrick v. Peterson,* 924 F.2d 813, 817–824 (9th Cir.1990); *United States v. Glover,* 596 F.2d 857, 865 (9th Cir. 1979). It is undisputed that Garibay's IQ is borderline retarded and that he has difficulty understanding the English language.[6] Additionally, the pre-sentence report confirmed Garibay's inability to understand oral instructions.[7] Without these skills, Garibay could not have knowingly and intelligently waived his rights. The government presented no evidence to contradict the fact that Garibay, in addition to being limited-English proficient, is borderline retarded with extremely low verbal-English comprehension skills.

In applying the "totality of circumstances" test, we further examine whether other circumstances surrounding Garibay's interrogation indicate that he knowingly and intelligently waived his constitutional rights, despite his English-language difficulties, borderline retarded IQ, and poor verbal comprehension skills. *See Derrick,* 924 F.2d at 817–824. The following considerations guide our inquiry: (1) whether the defendant signed a written waiver, *See Bernard S.,* 795 F.2d at 752–753; *United States v. Bautista–Avila,* 6 F.3d 1360, 1365 (9th Cir.1993); (2) whether the defendant was advised of his rights in his native tongue, *see id.; United States v. Gonzales,* 749 F.2d 1329, 1336 (9th Cir.1984); (3) whether the defendant appeared to understand his rights, *see id.;* (4) whether a defendant had the assistance of a translator, *see Bernard S.,* 795 F.2d at 752–753; (5) whether the defendant's rights were individually and repeatedly explained to him, *see Derrick,* 924 F.2d at 824; and (6) whether the defendant had prior experience with the criminal justice system, *see Glover,* 596 F.2d at 865.

Here, none of these considerations are present. Garibay was not given a written waiver to sign in either English or Spanish nor was he advised of his rights in Spanish. Garibay's rights were recited to him only in English. Although translators were available at the time of Garibay's arrest, they were not brought in to help question him.[8]

---

**6.** The record is clear that on a scale of one to ten, Garibay's English **verbal** comprehension was below four. Dr. Heller, a clinical psychologist, was the sole expert to testify at the evidentiary hearing on the issue of Garibay's mental capacity. Dr. Heller is in private practice. She has been a consultant to the San Diego Juvenile Probation Department and to the San Diego Schools. She has previously testified as a court-appointed expert. Garibay's Spanish verbal comprehension was slightly higher, between four and six.

**7.** Dr. Harry Isner, a psychological coordinator at San Diego Regional Center for the Developmentally Disabled who helped prepare the pre-sentence report, corroborated Dr. Heller's conclusion. According to Dr. Isner, given Garibay's low IQ, Garibay would need a visual demonstration of his rights, personal experience, and repeated concrete instructions, to understand and intelligently waive his *Miranda* rights.

**8.** In *Bernard S.,* an Apache-speaking defendant had the informal assistance of his mother to help explain the questions posed to him in English. The reliability of translations made by official and lay-interpreters varies greatly. Here, Garibay had neither type of assistance.

The prosecution offered no evidence that Agent Burke individually explained each constitutional right to Garibay or repeated the explanation.

Moreover, Garibay had no previous experience with the criminal process.[9] Thus, Garibay's personal life experiences do not indicate that he was familiar with his *Miranda* rights and his option to waive those rights. *See e.g., Cooper v. Griffin,* 455 F.2d 1142, 1144–45 (5th Cir.1972) (holding that in view of armed robbery defendants' mental retardation, poor reading comprehension, and no prior experience with the criminal process, confessions obtained after defendants orally waived right to counsel and signed written waiver forms were inadmissable).

The prosecution, however, contends that Garibay indicated to Agent Burke that he understood his rights. Agent Burke, however, also admitted to rephrasing questions when Garibay did not appear to understand him. Also, the testimony of Garibay's football coach clearly shows that Garibay, in the presence of authoritative figures, would indicate he understood what was being said to him in English when he did not.

Thus, the facts surrounding Garibay's interrogation clearly indicate that he did not understand the nature of the rights he was waiving. Moreover, the customs agents took no steps to ensure that Garibay's waiver was knowing and intelligent.[10] Therefore, we conclude that the district court clearly erred in finding that despite Garibay's low IQ and poor English-verbal comprehension, he nonetheless functioned at a level sufficient to have understood and waived the constitutional rights orally read to him in English by Agent Burke. Thus, in the circumstances of this case, the district court erred in not suppressing Garibay's inculpatory statements.

**9.** *Cf. Glover,* 596 F.2d at 866 (finding that defendant with low intelligence score and "extensive dealings with the criminal process during a time when he would not be considered a youth" had sufficient experience to familiarize himself with the "right to remain silent, the right to counsel, and the option to waive those rights"); *Heredia–Fernandez,* 756 F.2d at 1415–1416 (waiver valid where defendant received and signed waiver written in Spanish, repeatedly confirmed he understood his rights, and had been arrested 15 times in the past 8–10 years, thereby giving rise

## B. Sufficiency of the Evidence

On direct review, the government's commission of a constitutional error requires reversal of a conviction unless the government proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *see also Brecht v. Abrahamson,* 507 U.S. 619, 622–23, 113 S.Ct. 1710, 1713–14, 123 L.Ed.2d 353 (1993). "Review for harmless error requires not only an evaluation of the remaining incriminating evidence in the record, but also the most perceptive reflections as to the probabilities of the effect of error on a reasonable trier of fact." *United States v. Harrison,* 34 F.3d 886, 892 (9th Cir.1994) (finding that admission of defendant's statements after arrest were reversible error where officers suggested that the court or prosecutor may treat him harsher if he remained silent) (citations and internal quotations omitted).

The government does not argue that Garibay's inculpatory statements, if inadmissible, were harmless. *See Chapman,* 386 U.S. at 24, 87 S.Ct. at 828 ("Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless.") A review of the record indicates that without Garibay's inculpatory statements there is insufficient evidence to support Garibay's convictions.

A defendant's inculpatory statement "is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante,* 499 U.S. 279, 296, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991) (citations and internal quotations omitted). A defendant's own statements "have pro-

to the fair presumption that he was familiar with *Miranda* rights procedures).

**10.** This entire discussion could probably have been avoided had the customs agents obtained a written *Miranda* waiver. But we were told by the government at oral argument that the government's policy at the border was not to use written *Miranda* waivers in either Spanish or English.

found impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." *See id.* Garibay's inculpatory statements, recounted by Agent Burke, arguably indicate that Garibay knew he was in possession of and was transporting marijuana across the U.S.-Mexico border and that he had accepted $100 for delivering the marijuana to Calexico. The district court acknowledged that Garibay's statements were the thrust of the prosecution's case. At the sentencing hearing, the district court stated that the main issue of the case was "whether or not [Garibay] did knowingly participate in the importation of marijuana and the possession of the marijuana with intent to distribute. . . ." The court further stated that "other than that one statement at the time of arrest, which has been challenged throughout, tactically, *I don't really have any evidence to say what [Garibay's] role is*" (emphasis added). The government thus has failed to sustain its burden of proving beyond a reasonable doubt that the use of Garibay's inculpatory statements during trial was harmless error beyond a reasonable doubt.

### III

The requirement that a defendant "knowingly and intelligently" waive his *Miranda* rights "implies a rational choice based upon some appreciation of the consequences of the decision." *Cooper*, 455 F.2d at 1145 (citations and internal quotations omitted); *see also Miranda*, 384 U.S. at 464–65, 86 S.Ct. at 1622–23. Moreover, the Supreme Court has recognized that "[t]he Fifth Amendment privilege [against self-incrimination] is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without warning being given." *Miranda*, 384 U.S. at 468, 86 S.Ct. at 1625.

We are troubled by the circumstances surrounding Garibay's alleged waiver. It is hard for us to discern any justification for the agents' failure to ask Garibay whether he preferred Spanish or English and their failure to seek the assistance of bilingual agents in questioning Garibay. The agents' over-

sight is particularly glaring given that Garibay's primary language is Spanish, that Garibay was arrested at the U.S.-Mexico border, that Agent Burke had to rephrase several questions in English in an attempt to communicate with Garibay, and that bilingual agents were readily available. Although we have held that an officer need not use a printed waiver form to solicit a valid waiver of *Miranda* rights, *Terrovona v. Kincheloe*, 912 F.2d 1176, 1180 (9th Cir.1990), we are nonetheless troubled with the government's admission at oral argument that a policy exists at the border *against* using written *Miranda* waivers in either English or Spanish. The right to remain silent and the right to have counsel present during questioning are indispensable to the protection of the Fifth Amendment privilege against self-incrimination. Written waivers coupled with oral recitations help ensure that the necessary procedures are in place to protect such constitutional rights which all officials are sworn to uphold. In the circumstances of Garibay's custodial interrogation, we find that the steps taken to protect these essential rights were deficient. In light of the foregoing discussion, we reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.