[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13719
Non-Argument Calendar

_____

D. C. Docket No. 07-20073-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDY JEAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 17, 2008)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

On February 8, 2007, a Southern District of Florida grand jury returned a

two-count indictment against appellant Eddy Jean for importation of cocaine, in violation of 21 U.S.C. § 952(a), Count One, and possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), Count Two. After the district court, adopting the recommendation of a magistrate judge, denied his motion to suppress his custodial statements to Immigration and Customs Enforcement Agent Perez, Jean stood trial on his pleas of not guilty. The jury found him guilty on both counts, and the district court sentenced him to concurrent prison terms of 65 months. He now appeals his convictions, contending that the district court erred in denying his motion to suppress and that the evidence was insufficient to convict. We affirm.

On January 24, 2007, Jean arrived at Miami International Airport aboard an Air France flight from Port-au-Prince, Haiti. He had a carry on bag, and a Customs officer viewing it under the x-ray machine noticed that the contents of the bag were unusually dense. An examination of the bag revealed four wooden plaques containing cocaine powder.

Jean was arrested. Following his arrest, Agent Perez questioned him – after advising him of his Miranda rights and obtaining Jean's waiver of them. Jean told Perez that he was fluent in Creole, and that he could not read English. He could understand spoken English, however, and, as he spoke to Perez, he showed that he had no difficulty understanding and speaking English. He told Perez that he had

bought the plaques from a street vendor. Perez voiced disbelief, so Jean changed his story, claiming that a friend, Innocent, had introduced him to two individuals who gave him the plaques and told him that they contained drugs inside. He was to deliver the plaques to "Bib Dog" in Miami, and agreed to cooperate with the authorities and do that. A controlled delivery, however, proved unsuccessful.

Following his arraignment, Jean moved the district court to suppress his statements to Agent Perez. The court referred the motion to a magistrate judge for an evidentiary hearing. The focus of the hearing was whether Agent Perez had properly advised Jean of his Miranda rights, whether Jean understood them, and whether he freely and voluntarily waived his right to remain silent and to submit to questioning. After hearing from Agent Perez, the only witness to testify, the magistrate judge found that Perez had advised Jean of his Miranda rights in English, that Jean understood them, and that he waived his right to remain silent. She accordingly recommended that the district court deny Jean's motion to suppress. Jean objected to the magistrate's recommendation. The court overruled his objection and denied his motion.

I.

In reviewing the denial of a motion to suppress evidence, we accept the district court's findings of fact unless they are clearly erroneous, and we consider

3

the court's application of the law to the facts de novo. United States v. Garcia-Jaimes, 484 F.3d 1311, 1320 (11th Cir.), petition for cert. filed, No. 06-11863 (U.S. June 11, 2007). Statements an accused makes during a custodial interrogation are inadmissable unless he has been warned of his rights and knowingly, voluntarily, and intelligently waived them. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The Supreme Court has developed a two-part test to determine whether a valid waiver occurred:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (internal quotations omitted).

After reviewing the transcript of the evidentiary hearing before the magistrate judge, we are satisfied that Jean's post-arrest statements were made knowingly and voluntarily following a full advice, and waiver, of Miranda rights. Having reached this holding, we consider Jean's challenge to the sufficiency of the evidence to convict.

4

II.

Where, as in this case, the defendant "does not move the district court for a judgment of acquittal at the close of the evidence, we may reverse [his] conviction[s] only to prevent a manifest miscarriage of justice." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002). A manifest miscarriage of justice occurs when we find that the evidence supporting an element of the offense is so tenuous that the conviction is shocking. Id. It is the jury's responsibility to make credibility determinations. United States v. Ndiaye, 434 F.3d 1270, 1296 (11th Cir.), cert. denied, 127 S.Ct. 128 (2006).

"To sustain a conviction for possession of a controlled substance with intent to distribute, the government must show that a defendant knowingly possessed the controlled substance with the intent to distribute it." United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005). United States v. Donahey, 529 F.2d 831, 833 (5th Cir. 1976). To sustain a conviction for importation of a controlled substance, the government must prove that a defendant knew that he was importing a controlled substance, even if he did not know the particular drug being imported. United States v. Quilca-Carpio, 118 F.3d 719, 720-21 (11th Cir. 1997); United States v. Lewis, 676 F.2d 508, 512 (11th Cir. 1982).

5

We have held that, when the government has introduced corroborative evidence of guilt, a defendant's disbelieved trial testimony may be considered as substantive evidence of guilt, as the jury is permitted to conclude that the opposite of the defendant's testimony is true. United States v. Brown, 53 F.3d 312, 314-15 (11th Cir. 1995). This is particularly applicable for establishing subjective elements, such as a defendant's knowledge. Id. at 315.

Jean's convictions do not constitute a manifest miscarriage of justice. The jury obviously believed Agent Perez's testimony that Jean admitted knowingly possessing and importing drugs, and rejected Jean's testimony, which, given the prosecutor's searching cross-examination, was internally conflicting, that he was unaware that he possessed cocaine.

AFFIRMED.