UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Huff, Judge O'Brien and Senior Judge Haley
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.      Record No. 1125-15-1        JUDGE MARY GRACE O'BRIEN
DECEMBER 15, 2015

MERARI ACOSTA-MORENO


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Andrew E. Behrns (Hunter Law Firm, on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth of Virginia appeals a pre-trial order

granting Merari Acosta-Moreno's motion to suppress statements he made during an interview with

a City of Newport News fire marshal. The Commonwealth contends that: "(1) [t]he trial court

clearly erred when it found the defendant's waiver was not knowing and intelligent," and "(2) [t]he

trial court erred as a matter of law when it considered subsequent use of an interpreter as a fact

indicating the defendant's waiver was not knowing and intelligent." For the following reasons, we

conclude that the trial court erred and remand this case for further proceedings.

I. BACKGROUND

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence,

the evidence must be viewed in the light most favorable to the defendant and findings of fact are

entitled to a presumption of correctness unless they are plainly wrong or without evidence to

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

support them." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). We review the trial court's findings of historical fact only for "clear error," but we review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

So viewed, the evidence established that Assistant Fire Marshal Randy D'Arcy was investigating a case involving arson of an occupied dwelling and an attempted homicide. Acosta-Moreno was a suspect in the case. Fire Marshal D'Arcy went to the Newport News City Jail to speak with Acosta-Moreno, who was being detained on a charge of public intoxication. Although Spanish was his first language, Acosta-Moreno spoke in English to D'Arcy and D'Arcy was able to understand him. However, D'Arcy declined to interview him at that time because D'Arcy determined that Acosta-Moreno was too intoxicated.

Two days later, D'Arcy met with Acosta-Moreno again at the jail. D'Arcy introduced himself, explained why he was there, and "went ahead and advised [Acosta-Moreno] of his Miranda rights in English." Acosta-Moreno told D'Arcy he would not sign the rights waiver form because he "[did] not read English but he was able to understand it." At that point, D'Arcy gave Acosta-Moreno a separate card with the Miranda warnings written in Spanish, and told Acosta-Moreno to read along as D'Arcy re-advised him of his rights in English. After D'Arcy finished the re-advisement, Acosta-Moreno told D'Arcy that he "wanted to help with [the] investigation."

D'Arcy spoke with Acosta-Moreno for an hour and a half; the conversation was conducted entirely in English. D'Arcy testified that Acosta-Moreno answered all of his questions during the interview, and it appeared that he understood all the questions. D'Arcy described the conversation with Acosta-Moreno as "fluid" and testified that he "was impressed at

how well [Acosta-Moreno] spoke English." D'Arcy said that he did not recall having to reword any of the questions for Acosta-Moreno to understand him, but he might have "asked the same question in different ways to see if [he] got different answers." Ultimately, Acosta-Moreno confessed to the arson and explained that he "poured gasoline on the front door and lit it on fire." At no time during the interview did Acosta-Moreno invoke his right to silence or request an attorney. The interview was not recorded because D'Arcy did not have his recorder with him.

Three months later, D'Arcy attempted to interview Acosta-Moreno again. This time D'Arcy brought Investigator Danielle Davis, who spoke Spanish. D'Arcy testified that he asked Detective Davis to be present in the second interview to make sure "nothing was lost in the translation." Detective Davis responded affirmatively when defense counsel asked if "sometimes people that are native Spanish-speakers try to do their best to communicate in English for perception purposes." Detective Davis advised Acosta-Moreno of his rights in Spanish, and Acosta-Moreno immediately invoked his right to have an attorney present. D'Arcy terminated the interview.

The parties stipulated that Acosta-Moreno was born in El Salvador, where he lived until he was seventeen years old.[1] He was raised speaking only Spanish and did not begin learning English until 2012. He had never taken formal English courses. The parties also stipulated that Acosta-Moreno's ex-girlfriend would have testified that although she generally conversed with him in English, he sometimes did not understand English and would have difficulty comprehending paperwork and technical terms. The parties agreed that if Acosta-Moreno testified, he would say that he saw "what appeared to be a Spanish card but he did not read it" and he believed that he and D'Arcy were "just talking as a conversation."

---

[1] Acosta-Moreno was twenty-five years old at the time of the offense.

D'Arcy also testified that he had listened to several phone calls Acosta-Moreno made from the jail. In all of the conversations, Acosta-Moreno spoke completely in English.

Acosta-Moreno moved to suppress all statements he made during the first interview and argued that he did not knowingly and intelligently waive his <u>Miranda</u> rights. At the conclusion of the suppression hearing, the trial court granted the motion to suppress. The court found that while D'Arcy believed Acosta-Moreno could converse in English, "there were certain things, at least as I wrote down, [D'Arcy] indicated he would have to re-explain that [Acosta-Moreno] did not understand [and] he would explain again." The court also said

> the thing that's causing [me] the most concern is . . . the reason for [Detective Davis] being there the second time was to make sure that there was no confusion. . . . [T]here must have been some indication there may have been some confusion and the fact once [Detective Davis] advised the defendant in Spanish, he invoked those rights, to me based on that I'm going to grant the motion to suppress.

## II. ANALYSIS

### A. Standard of Review

On appeal, "the inquiry whether a waiver of <u>Miranda</u> rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." <u>Harrison v. Commonwealth</u>, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992). "This factual finding will not be disturbed on appeal unless plainly wrong." <u>Id.</u> (quoting <u>Watkins v. Commonwealth</u>, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985)).

B. The Trial Court's Decision was based on an Incorrect Finding of Fact

The Commonwealth contends that the trial court erred because it based its decision on a "factual finding that was plainly wrong on the face of the record."  We agree and accordingly reverse the trial court's decision.[2]

A defendant may waive his Fifth Amendment right to counsel if he makes such waiver voluntarily, knowingly, and intelligently.  Miranda v. Arizona, 384 U.S. 436, 444 (1966).  The Commonwealth bears the burden of showing that the defendant waived his rights.  Id. at 471.  "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."  Moran v. Burbine, 475 U.S. 412, 421 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)).

In determining whether there has been a valid waiver, the court should consider the background, experience, and conduct of the defendant.  Bunch v. Commonwealth, 225 Va. 423, 433, 304 S.E.2d 271, 276 (1983).  Although courts have found that a limited ability to understand English *may* invalidate a defendant's waiver of his rights, see United States v. Short, 790 F.2d 464, 469 (6th Cir. 1986), "such a circumstance does not necessarily thwart an effective waiver," United States v. Guay, 108 F.3d 545, 549 (4th Cir. 1997) (citing Campaneria v. Reid, 891 F.2d 1014, 1020 (2d Cir. 1989)).

Many courts have held that a defendant can waive his Miranda rights even if English is not his native language.  See United States v. Jean, 285 F. App'x 651, 652-53 (11th Cir. 2008) (holding that defendant, who spoke Creole and could not read English, was able to knowingly waive his rights when he could understand spoken English, could communicate orally in English,

---

[2] Because we agree with the Commonwealth, we need not address the Commonwealth's second assignment of error, concerning the trial court's finding of fact regarding the use of an interpreter.

and was able to provide detailed information about his involvement in the offense); United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) (holding that defendant's waiver was valid when he had "a reasonably good command of the English language"); United States v. Richardson, 2010 U.S. Dist. LEXIS 136004, at *5 (E.D.N.Y. Dec. 23, 2010) (holding that defendant had sufficient proficiency in English to waive his Miranda rights when he was able to respond to questions asked in English in a relevant and responsive fashion, was able to provide detailed answers about the offense, and never indicated that he did not understand the questions).

In Campaneria, the Second Circuit found that although the defendant's proficiency in the English language was "limited, it did not prevent him from making a knowing and intelligent waiver of his constitutional rights. . . . [A]lthough he spoke in broken English with an accent and occasionally lapsed into Spanish, his command of English was sufficient for him to have understood the Miranda warnings given to him." 891 F.2d at 1020. Likewise, in United States v. Munoz, 748 F. Supp. 167, 169-70 (S.D.N.Y. 1990), the court cited the Campaneria case when it held that "[t]here is no obligation to use a suspect's native language, as long as he has sufficient command of the language in which he was warned to waive his rights intelligently and knowingly." Id. at 170.

While a trial court's factual finding concerning a waiver of Miranda rights is accorded great deference, it must be based on a proper reading of the record. In United States v. Garibay, 143 F.3d 534 (9th Cir. 1998), the Ninth Circuit Court of Appeals reversed the trial court's finding that the defendant's waiver was knowing and intelligent because the court based its holding on incorrect factual findings. In Garibay, the court found that the defendant "declined the agents' offer to be questioned in Spanish," but the record reflected that the agents, in fact, made no such offer. Id. at 537. The agents merely assumed the defendant was sufficiently proficient in English and proceeded to interview him in English. Id. The agents admitted,

however, that they would have to rephrase questions during the interview because the defendant did not appear to understand. Id. at 538-39. The court also found that the defendant "opted for an English only curriculum" in high school, when the record actually showed that the defendant received a D+ in eleventh and twelfth grade English courses, and the courses were taught "using Spanish." Id. at 537. Further, in Garibay, extensive testimony was adduced that the defendant had significant cognitive deficits which could impact his ability to understand the questions that were presented to him. Id. at 538.

In the present case, the trial court reached the opposite conclusion, but, like the trial court in Garibay, it based its conclusion on an incorrect recollection of the testimony. The court erroneously believed that Detective D'Arcy testified that "there were certain things, . . . the detective indicated he would have to re-explain that [Acosta-Moreno] did not understand [that] he would explain again." In fact, the opposite was true. D'Arcy testified that he did not "recall having to reword a question" because Acosta-Moreno did not understand it, but he "may have asked the same question in different ways to see if [he] got different answers." When defense counsel asked him, "So you weren't concerned about any misunderstanding at all?," D'Arcy responded, "No, sir."

Nothing in the record indicates that the trial court did not believe D'Arcy's testimony that he did not need to repeat questions to Acosta-Moreno; the judge simply misunderstood the testimony or remembered it incorrectly.

Acosta-Moreno also argues that there are facts to support his position that he did not knowingly and voluntarily waive his rights: he saw the rights waiver card in Spanish but did not read it, he did not learn English until 2012, and his girlfriend believed that sometimes he did not understand English. However, other facts would support the Commonwealth's contention that Acosta-Moreno understood English and made a knowing and intelligent waiver of his Miranda

- 7 -

rights: the detail Acosta-Moreno provided in his hour and a half interview with D'Arcy and the fact that Acosta-Moreno's phone conversations from the jail were all conducted in English. Therefore, although there are facts in the record that arguably could support Acosta-Moreno's contention that he did not understand his rights, the trial court did not rely on those facts in making its ruling. The trial court's basis for declaring the waiver invalid was the mistaken belief that D'Arcy had to repeat questions and rephrase them so that Acosta-Moreno could understand them. As an appellate court, we are "not free to re-weigh the evidence." Morris v. Commonwealth, 272 Va. 732, 742, 636 S.E.2d 436, 442 (2006). Rather, we must examine the trial court's finding of fact, which, in this case, was plainly wrong on the face of the record. Accordingly, we reverse the decision of the trial court.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court suppressing Acosta-Moreno's confession, and we remand the case for further proceedings.

Reversed and remanded.

Huff, C.J., dissenting.

I respectfully dissent because the trial court's decision to grant appellee's motion to suppress was not plainly wrong. The majority holds that the trial court erred when it found that D'Arcy indicated that he would have to re-explain information appellee did not first understand. Finding that "the judge simply misunderstood the testimony or remembered it incorrectly," the majority concludes that the trial court's ruling was plainly wrong because this fact was the only basis for the trial court's decision to grant the motion to suppress. Assuming the trial court was incorrect in making this fact finding, I would still affirm the trial court's ruling because this fact was not the basis for the trial court's decision. Instead, the trial court stated that what was "causing [it] *the most concern*" was the testimony of both D'Arcy and Detective Davis that "the reason for [Davis] being there the second time was to make sure that there was no confusion." In spite of D'Arcy's testimony that he felt confident appellee understood that he was waiving his Miranda rights, the trial court found the evidence

> begs the question why would there be a need to make sure there
> was no confusion if [appellee] understood and that he was
> provided the written rights in Spanish, that he understood what he
> had, at least *that he was actually aware of his rights at the time* and
> not that the Spanish card was handed back to the prior detective
> based on his belief that they were just talking.

(Emphasis added). Coupled with the fact that appellee immediately invoked his right to counsel when orally advised of his rights in Spanish, the trial court concluded that it was "going to grant the motion to suppress" based on the fact that "*there must have been some indication of confusion.*" (Emphasis added).

I agree with the majority's observation that "the inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution

of that question is entitled on appeal to a presumption of correctness." Harrison v.

Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

> [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The [trial] court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The [trial] court's determination is a question of fact *based upon the totality of the circumstances*. This factual finding will not be disturbed on appeal unless *plainly wrong*.

Id. (emphasis added) (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422,

429-30 (1985)) (first alteration in original).

Given this standard of review, in view of the totality of the circumstances, I cannot say

the trial court's finding was plainly wrong because, as the majority notes, "there are facts in the

record that arguably could support [appellee's] contention that he did not understand his rights."

First, D'Arcy testified that after reading from a Miranda rights waiver form, he held up the

Spanish side of a separate Miranda card for appellee to read "[t]o make sure there was no

confusion." Appellee had refused to sign the waiver form because he stated he could not read

English. Additionally, D'Arcy testified that he "may have asked the same question in different

ways to see if [he] got different answers" from appellee throughout the one and a half hour

interview. These circumstances were coupled with several stipulated facts also before the trial

court, including: 1) appellee started learning English in 2012 and had never taken formal

English courses;[3] 2) appellee had never been arrested previously; 3) "[appellee] saw what

---

[3] The majority cites several cases for the proposition that "a defendant *can* waive his Miranda rights even if English is not his native language," however, in each of the appellate decisions, the courts were reviewing the trial court's decision *denying* the motion to suppress for clear error. (Emphasis added). See United States v. Jean, 285 F. App'x 651, 653 (11th Cir. 2008) ("In reviewing the denial of a motion to suppress evidence, we accept the district court's findings of fact unless they are clearly erroneous . . . ."); United States v. Jaswal, 47 F.3d 539, 541 (2d Cir. 1995); Campaneria v. Reid, 891 F.2d 1014, 1016 (2d Cir. 1989). By contrast, the issue in this case was whether the trial court's decision *granting* the motion to suppress was clearly erroneous. I would not hold that a defendant whose native language is not English could

appeared to be a Spanish card but he did not read it;" 4) appellee believed he and D'Arcy were "just talking as a conversation" during the interview; 5) appellee's girlfriend could generally converse with appellee in English but sometimes he did not understand; and 6) appellee's girlfriend believes appellee would have trouble understanding paperwork and technical terms.

Furthermore, the trial court also considered the fact that D'Arcy made sure to have a detective fluent in Spanish present for the second interview. Although D'Arcy had read Miranda rights to appellee twice in English, D'Arcy acknowledged that he made sure to have Davis present to orally give appellee his Miranda rights for the third time in Spanish "*to make sure that nothing was lost in the translation*, to make sure there was no confusion and to make sure that he understood everything." (Emphasis added). The trial court found this fact particularly noteworthy considering that as soon as appellee heard his rights orally in Spanish, he invoked his right to an attorney. All of these facts support the trial court's holding that appellee did not knowingly and intelligently waive his Miranda rights during the first interview.

The majority relies on United States v. Garibay, 143 F.3d 534 (9th Cir. 1998), for its reversal of a trial court's decision to deny a motion to suppress based on incorrect factual findings. Essential to the Ninth Circuit's holding in Garibay, however, was the fact that the *only* facts that supported the trial court's denial of the motion to suppress had no foundation in the record. Id. at 537. Concluding that these factual findings were incorrect, the Ninth Circuit went on to review all the "circumstances surrounding [the appellant's] interrogation" and reversed the trial court because it found there were no other circumstances in the record to indicate that the appellant made a knowing and intelligent waiver. Id. at 538-39.

_____

never waive his rights, but rather, that appellee's language ability is a factor, which, when viewed in the light most favorable to appellee, supports the trial court's decision. See United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir. 1985) ("[L]anguage difficulties may impair the ability of a person in custody to waive [Miranda] rights in a free and aware manner.").

Conversely, here, even if the fact that D'Arcy had to restate his questions was not supported by the record, as noted above there are still several other facts in the record that support the trial court's ruling granting the motion to suppress. See Solis v. State, 851 P.2d 1296, 1300 (Wyo. 1993) (affirming the trial court because there was sufficient evidence in the record to support both the State and the appellant's contentions). As the trial court stated, "the thing that[] caus[ed] [it] *the most concern* [was] . . . the reason for [Davis] being there the second time was to make sure that there was no confusion." (Emphasis added). Thus, the trial court concluded by ruling

> that [Davis] was brought in to avoid any confusion . . . begs the question there must have been some indication there may have been some confusion and the fact once you advised [appellee] in Spanish, he invoked those rights, to me *based on that* I'm going to grant the motion to suppress.

(Emphasis added). This inference is supported by testimony and stipulated facts in the record and, therefore, the trial court's ruling was not plainly wrong. See Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . we do not presume acquiescence in the loss of fundamental rights."). For these reasons, I would affirm the ruling of the trial court granting the motion to suppress.