UNITED STATES of America,
Plaintiff,

v.

D–1 Kennora THORNTON, Defendant.

No. 01CV80616.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 7, 2001.

Elizabeth L. Jacobs, Detroit, MI, for defendant.

*OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUP-PRESS THE WRITTEN STATE-MENT [17–1]*

TARNOW, District Judge.

## I. Introduction [1]

On September 4, 2001, defendant Kennora Thornton filed a motion to suppress her oral statement of July 6, 2001, and her written statement of July 7, 2001. An evidentiary hearing on the motion was held on October 19 and 22, 2001, and the Court suppressed the oral statement in an order dated October 26, 2001. Thus, the only remaining question before the Court is whether the written statement should also be suppressed.

## II. Factual Background

On July 6, 2001, several River Rouge police officers executed a warrant at the Thornton residence. The police found cocaine, currency, and other drug parapher-

1. Law Clerk Amy Harwell provided quality research assistance.

nalia during the search. Defendant Kennora Thornton was present during the execution of the warrant and was taken into custody that evening. She was held overnight in the River Rouge police department. The parties have stipulated that Ms. Thornton's family sent a lawyer to the jail on the evening of the 6th, but she was not allowed to see Ms. Thornton. She left her card for Ms. Thornton, but Ms. Thornton testified that she never received it. Ms. Thornton was not given her *Miranda* rights, nor was she questioned on the 6th.

The next morning, July 7th, a federal complaint was filed against Ms. Thornton. The Drug Enforcement Administration (DEA) took her into federal custody. Agent Lynch of the DEA read Ms. Thornton her *Miranda* rights, handcuffed her behind her back, and placed her in a vehicle with Agent Faes, also of the DEA, for the trip from River Rouge to the Detroit DEA office. Agent Lynch followed behind in another car.

Agent Faes testified in a hearing before this Court on October 22, 2001, that Ms. Thornton was crying and upset during the trip to Detroit and asking about her children. She is mother of seven children. Agent Faes testified that she was concerned about where they were and who was taking care of them.

Once the agents and Ms. Thornton arrived at the DEA office, she was processed and taken to an interrogation room. She was not given her *Miranda* rights again, and she did not sign a waiver of her rights. Agents Lynch and Faes conducted the interrogation. Agent Faes wrote the questions and had Ms. Thornton write her answers. Ms. Thornton was crying throughout the interrogation and asked several times about her seven children and when she would be allowed to see them. At the end, the agents told her to sign the form, and she did. There is no audio or video tape of the session in the interrogation room between Ms. Thornton and the DEA agents.

Ms. Thornton testified that she signed the confession, because the agents told her she had to sign the form before they could take her to court. She was scared since she had never been arrested before. She testified that she asked the agents several times, "Shouldn't I have a lawyer?" or "When am I supposed to get a lawyer?" They responded that she would get a lawyer when she went before the Magistrate Judge at 11:00 on that morning, Saturday, July 7. They also told her she would be allowed to see her children after she went to court.[2] She testified that Agent Lynch told her if she did not sign the form, she would not go to court. Thus, in Ms. Thornton's mind, if she did not sign the form, she would not go to court, she would not be provided an attorney, and more importantly to her: she would not see her children. Alternatively, by just signing the form, the agents had all but promised her she would be provided an attorney and be home to see her children that day. The audio tape of the July 7 hearing indicates Ms. Thornton was crying during the hearing.

Ms. Thornton filed a motion to suppress both her oral statement of June 6, 2001, and her written statement of July 7, 2001. The Court, in an order dated October 26, 2001, suppressed the oral statement. The

---

**2.** The agents testified that they thought Ms. Thornton would be allowed to go home that day because she did not have a criminal record. Similarly, Ms. Thornton testified the agents repeatedly told her she would be allowed to go home and see her children that day. The agents were surprised that she was held over the weekend instead. She was released on bond on Monday, July 9.

parties submitted briefs on whether the written statement should also be suppressed.

## III. Discussion

■ While the Court finds the government read Ms. Thornton her *Miranda* rights, the voluntariness inquiry under the Due Process Clause is separate from whether *Miranda's* requirements regarding the Fifth Amendment privilege against self-incrimination are satisfied. *Dickerson v. United States*, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry.").

■ In *Culombe v. Connecticut*, the Supreme Court described the voluntariness test:

"The ultimate test remains that which has been the only clearly established test in Anglo–American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker?...If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process."

367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). A court must look at the totality of the circumstances, including the defendant's will and the police coercion alleged, to determine if a confession is voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (in discussing the standards for a consent search under the Fourth Amendment, the Court examined the voluntariness test as applied to confessions); *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

■ The Court finds, after considering all of the circumstances surrounding the confession, that Ms. Thornton's confession was involuntary and must be suppressed. The agents knew that Ms. Thornton was extremely worried about her children. All of the agents testified that Ms. Thornton asked about her children several times during the transporting, processing, and interrogating. Most of the agents testified that Ms. Thornton appeared upset and cried at several points during the day. She was still crying at the hearing Saturday morning. When she asked whether an attorney was present, the agents told her she would be provided with an attorney when she went to court. They neither gave her the card from the attorney her family hired, nor tried to clarify whether she was requesting an attorney at that point.[3] Ms. Thornton had never been involved in the criminal justice process, and she obviously did not understand that if

---

**3.** Under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), interrogators must immediate cease questioning when a suspect clearly asserts his right to have an attorney present during questioning. In *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Court refused to extend *Edwards* to situations where the suspect makes an "ambiguous or equivocal reference to an attorney." In *Davis*, the suspect stated during interrogation, "Maybe I should talk to a lawyer," and the Court held that was too ambiguous to trigger *Edwards*. *Id.* at 455, 114 S.Ct. 2350. However, the *Davis* interrogators also followed the suspect's statement by asking whether the suspect wanted an attorney, and the suspect said "No, I don't want to talk to a lawyer." *Id.* The Court did not make this further inquiry a requirement, but declared it is a "good police practice" to clarify whether a suspect is asking for an attorney. *Id.* at 461, 114 S.Ct. 2350. Four concurring justices stated they would *require* investigators to make further inquiry into whether the suspect wants an attorney. *Id.* at 466, 114 S.Ct. 2350.

In this case, the Court does not reach the question of whether Ms. Thornton's questions referring an attorney were unambiguous enough to trigger *Edwards'* protection. The

she asked for a lawyer, the questioning would stop. In fact, they mislead her by telling her that she had to go to court to get an attorney, and she had to sign the form in order to go to court. Finally, and perhaps most egregiously, the agents knew she was very concerned about her children, and they told her once she went to court, she would be released and be able to see her children that day. In essence, they forced her to sign a form to see her children. The Court finds that Ms. Thornton's choice to sign her confession could not be the product of an "essentially free and unconstrained choice by its maker." *Cf. Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (confession held involuntary where police told suspect that aid for her children would be stopped and her children would be taken from her unless she cooperated).

 The Court notes that neither the interrogation nor confession were audio or video taped. While electronic recording is not a constitutional requirement, there is a "heavy burden" on the government to show a suspect's waiver of rights was knowing and intelligent. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[4] To that end, several jurisdictions in the United States have instituted mandatory taping of confessions, waivers of *Miranda* rights, and interrogations, such as Alaska and Minnesota,[5] while many more tape voluntarily. It certainly harms the prosecution in a close case when the court cannot evaluate the actual confession. The Court recommends that the DEA electronically record future interrogations and confessions so a reviewing court can fully evaluate whether a confession violates Fifth or Fourteenth Amendment.

Because the Court finds the statement was involuntary, the Court does not reach the question whether Ms. Thornton waived her *Miranda* rights.

## IV. Conclusion

Because the government has not shown the statement was voluntary,

IT IS ORDERED that defendant, Kennora Thornton's, motion to suppress the statement is GRANTED.

---

Court refers to her questions about an attorney to indicate the effect the agents' answer that she would not be provided an attorney until she got to court (and she would not go to court until she signed the form) had on the "totality of the circumstances" surrounding the voluntariness of her confession.

4. The Supreme Court stated "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his [rights]...Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." *Miranda,* 384 U.S. at 475, 86 S.Ct. 1602.

5. *See State v. Scales* 518 N.W.2d 587 (Minn. 1994); *Stephan v. State,* 711 P.2d 1156 (Alaska 1985).