**UNITED STATES OF AMERICA,**
**Plaintiff,**

v.

**JaJuan LEWIS and Theotrice**
**Chambers, Defendants.**

No. 04–80359.

United States District Court,
E.D. Michigan, Southern Division.

Feb. 3, 2005.

Janice V. Terbush, U.S. Attorney's Office (Detroit), Detroit, MI, for Plaintiff.

Andrew N. Wise, S. Allen Early, III, Federal Defender, Federal Defender Office (Detroit), Detroit, MI, for Defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS TO SUPPRESS

COHN, District Judge.

### I. Introduction

This is a criminal case. Defendants Ja-Juan Lewis (Lewis) and Theotrice Chambers (Chambers) are charged in the First Superseding Indictment with five (5) counts of various drug offenses. Now before the Court are motions to suppress the statements each defendant gave to Drug Enforcement Administration (DEA) Task Force officers on June 5, 2003 following their arrests at the DEA office in Detroit on the grounds each was not advised of his *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For the reasons that follow, the motions are GRANTED.

### II. Background

The arrests occurred during the execution of a search warrant. In the course of the execution, the task force agents, Raymond Faes, a City of River Rouge police officer; Dean Smith, a City of Detroit police officer; and Michael Johns, a DEA agent; found drugs and drug paraphernalia. The defendants were taken to DEA headquarters in Detroit where each was separately questioned. The three officers were present at the interview of Lewis; Johns was not present at the interview of Chambers.

An evidentiary hearing was held on the motions on December 3, 2004. The three officers and the defendants testified at the hearing.

The officers' testimony was to the effect that at the beginning of the interviews the defendant was advised of his *Miranda* rights by the reading of DEA Form 71, *Miranda* Advisement.[1] The defendant ac-

---

1. A copy of DEA Form 71 is attached to this Order as Exhibit A.

knowledged the fact that he understood his rights and the defendant declined to sign the form. The officers also testified that each of the defendants voluntarily "gave the information reflected in the Form 6 described below." No officer signed DEA Form 71, although the form has two (2) lines for the signature of witnesses. No officer took notes of the interviews. The only record of the interviews was a DEA Form 6 Report of Investigation prepared by Faes on June 6, 2003, and signed by him on August 29, 2003. The form briefly summarizes the statements of each defendant.[2]

### III. Discussion

#### A. A Note About Recorded Interrogations

While video equipment and audio cassette equipment was available at the DEA headquarters, as a matter of policy interviews such as those which occurred on June 5, 2003 are not recorded. The Assistant United States Attorney prosecuting the case has advised the Court:

> DEA policy does not prohibit the recording of statements. Rather, the policy requires the recording of statements if the agents request that the interview be recorded and the defendant consents to the video or audio recording. While the recording of interviews would certainly make for less litigation over suppression issues, the government continues to believe that case law does not require suppression simply because the agents chose not to record the interview.

The notion of recording interrogations is not new, nor is it uncommon. Indeed, less than a decade after *Miranda* the American Law Institute proposed recording of interrogations as a way to eliminate disputes over statements made during interrogations. American Law Inst., *A Model Code of Pre–Arraignment Procedure* § 130.4(3) (1975). A 1993 report from the United States Department of Justice found that as of 1990, nearly one-sixth of all police and sheriffs' departments in the country videotaped at least some interrogations or confessions. William A. Geller, *Videotaping Interrogations and Confessions*, Nat'l Inst. of Justice, U.S. Dep't of Justice, Research in Brief (Mar.1993).

Two states—Alaska and Minnesota—require recorded interrogations. *See Stephan v. State*, 711 P.2d 1156 (Alaska 1985); *State v. Scales*, 518 N.W.2d 587 (Minn. 1994). *See also Mallott v. State*, 608 P.2d 737, 743 n. 5 (Alaska 1980). The District of Columbia, Illinois, Maine, and Texas have, by legislation, imposed a recording requirement for certain types of cases and interrogations. *See* D.C.Code Ann. § 5–133.20; 725 Ill. Comp. Stat. Ann. 5/103–2.1; Me.Rev.Stat. Ann. tit. 25, § 2803–B(1)(J); Tex.Crim. P.Code Ann. § 38.22(3)(a). A recent article in the Drake Law Review discusses other jurisdictions that are considering implementing a recording requirement and suggests that "recording interrogations may soon become the rule, rather than the exception." Steven A. Drizin & Marissa J. Reich, *Heeding the Lessons of History: The Need for Mandatory Recording of Police Interrogations to Accurately Assess the Reliability and Voluntariness of Confessions*, 52 Drake L.Rev. 619, 639–45 (2004).[3] Additionally, the American Bar Association unanimously ac-

---

**2.** A copy of DEA Form 6 is attached as Exhibit B.

**3.** The article notes that the Massachusetts Supreme Court, the New Jersey Supreme Court, and the Wisconsin Supreme Court recently decided to examine the issue of recording interrogations. *Id.* at 641. The article also discusses how a series of newspaper articles

in the *Washington Post*, the *Miami Herald*, and the *San Antonio Express–News* exposing problems of false confessions prompted police departments in Prince George's County, Maryland; Broward County, Florida; Fort Lauderdale, Florida; Miami, Florida; and San Antonio, Texas to institute policies requiring recorded interrogations.

cepted a resolution in early 2004 that urges law enforcement agencies across the country to videotape interrogations. *Id.* at 640.[4] On a global scale, Great Britain, Canada, and Australia all require either audio or video recordings of interrogations. Daniel Donovan & John Rhodes, *Comes a Time: The Case for Recording Interrogations,* 61 MONT. L.REV. 223, 231 (2000). If law enforcement officers in Australia fail to comply with the requirement, the jury will receive an instruction suggesting any police testimony about a confession may be unreliable. *Id.*

Affording the Court the benefit of watching or listening to a videotaped or audiotaped statement is invaluable; indeed, a tape-recorded interrogation allows the Court to more accurately assess whether a statement was given knowingly, voluntarily, and intelligently. One legal commentator has noted that "some of the most detailed assessments of voluntariness have come in cases of recorded interrogations, which permit judges to parse implicit promises and threats made to obtain an admission." Paul G. Cassell, *Miranda's Social Costs: An Empirical Reassessment,* 90 Nw. U.L.REV. 387, 487 (1996). "Taping is thus the only means of eliminating 'swearing contests' about what went on in the interrogation room." *Id.*

### B. Analysis

Each defendant testified that he was not read his *Miranda* rights. Particularly, Chambers has a severe stuttering problem and could barely articulate his answers to questions. No mention of this difficulty was mentioned in any officers' testimony or on DEA Form 6. Each defendant is not a stranger to the criminal justice system. On a prior occasion, Lewis, following his arrest, was interviewed and he signed a *Miranda* rights form.

■ The government has the burden of proof as to the waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). This means the government must establish that it was more likely than not that a defendant was read his *Miranda* rights and acknowledged that he had a right to remain silent.

■ Given the totality of the circumstances of the interviews, it cannot be said that the government has carried its burden:

● the three officers are experienced in matters of arrest, interrogation and the obligation to advise a defendant of his *Miranda* rights;

● no officers signed the *Miranda* advisement form to memorialize the fact that he was a witness to the advice of rights;

● no officer took notes of an interview to memorialize a defendant's statement;

● the interviews were not memorialized by video or audio recording, notwithstanding that equipment to do so was available, and notwithstanding the fact that one of the officers had previously been involved in a interview situation where the failure to record was criticized, *see United States v. Thornton,* 177 F.Supp.2d 625, 628 (E.D.Mich. 2001);

---

**4.** The resolution provides, in pertinent part:
[T]he American Bar Association urges legislatures and/or courts to enact laws or rules of procedure requiring videotaping of the entirety of custodial interrogations of crime suspects at police precincts, courthouses, detention centers, or other places where suspects are held for questioning, or, where videotaping is impractical, to require the audiotaping of such custodial interrogations, and to provide appropriate remedies for non-compliance.
*See* Am. B. Ass'n, N.Y. County Lawyers' Ass'n, Criminal Justice Section, *Report to the House of Delegates* (Feb.2004), *available at* http:// www. abanet.org/leadership/2004/recommendations/8a.pdf.

- only a summary of what was said in an interview and the officers' memory of what was said is available to establish the fact that *Miranda* advice was given a defendant; and

- each defendant denies that his *Miranda* rights were given him.

*Miranda* rights are substantive. A bright-line rule requires that they be given to a defendant. "When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the [government's] case in chief." *Oregon v. Elstad,* 470 U.S. 298, 317, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Establishing that they were given to a defendant in the circumstances reflected in the record is simply too slender for a finding that it was more likely than not that they were in fact given.

SO ORDERED.

EXHIBIT A

**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

## MIRANDA ADVISEMENT

| PLACE |
|---|
| DATE |
| TIME |

- Before we ask you any questions, you must understand your rights.

- You have the right to remain silent.

- Anything you say can be used against you in court.

- You have the right to talk to a lawyer for advise before we ask you questions, and to have a lawyer with you during questioning.

- If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

- If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed _____

Printed Name _____

Witness: _____

Witness: _____

Time: _____

GOVERNMENT'S EXHIBIT

FORM DEA-71 (12-00)    Electronic Form Version Designed in Perform Pro 5.2 Version

EXHIBIT B

GOVERNMENT
EXHIBIT
1

U. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | | 2. Cross File | Related Files | 3. File No. | | 4. G-DEP Identifier |
|---|---|---|---|---|---|---|
| 5. By: TFA Raymond Faes At Detroit, Michigan | | ☐ ☐ ☐ ☐ ☐ | | 6. File Title LEWIS, Jajuan | | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | | 8. Date Prepared 6/6/03 | | |

9. Other Officers: S/A Mike Johns, TFA Dean Smith

10. Report Re: Post Arrest Statement of Jajuan LEWIS and Theotrice CHAMBERS on June 5, 2003

### DETAILS

1. - On June 5, 2003, Agents/Officers from DEA Detroit, Group 5, executed a State Search Warrant at 20900 Moross, Detroit, Michigan, and arrested Jajuan LEWIS and Theotrice CHAMBERS. Also seized was 167 grams of suspected cocaine.

2. Agents brought LEWIS and CHAMBERS back to the DEA Detroit Office where they were both read Miranda Rights, which CHAMBERS and LEWIS waived.

3. TFA Raymond Faes read CHAMBERS his Miranda Rights, as witnessed by Dean Smith, which CHAMBERS waived and agreed to cooperate. CHAMBERS said that he was the cook-man for Jajuan LEWIS and several others throughout the Detroit area that he cooks for. CHAMBERS said that he did all the cooking for LEWIS' narcotic transactions, if the customer wanted the product (cocaine) to be cooked.

4. CHAMBERS said that he did not sell any narcotics, but CHAMBERS said his only involvement was to cook cocaine into crack-cocaine for several dealers in the area. CHAMBERS agreed to cooperate with Agents on June 5, 2003.

5. S/A Mike Johns and TFAs Faes and Dean Smith interviewed LEWIS. TFA Faes read LEWIS his Miranda Rights, as witnessed by S/A Johns and TFA Smith, which LEWIS waived and agreed to cooperate. LEWIS said that he had been selling narcotics for extra money. TFA Faes asked where he was

| 11. Distribution: Division | 12. Signature (Agent) Raymond Faes, Task Force Agent | 13. Date 8/29/03 |
|---|---|---|
| District | 14. Approved (Name and Title) Hawthorne L. Hope, Jr., Group Supervisor | 15. Date 8·29·2003 |
| Other | | |

DEA Form - 6
(Jul. 1996)
PostArrStatement6503
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

of Justice
...nt Administration

**REPORT OF INVESTIGATION**
*(Continuation)*

| 1. File No. | 2. G-DEP Identifier |
|---|---|
| 3. File Title | |
| LEWIS, Jajuan | |

4.
Page 2 of 2

5. Program Code

6. Date Prepared
6/6/03

purchasing his narcotics from and LEWIS replied, from a black male who lives on Outer Drive in Detroit named "ORF". LEWIS said he did not know "ORF's" real name.

6. LEWIS said that he was selling narcotics (cocaine) for several years, and had been arrested in the past for Possession With the Intent to Deliver.

7. LEWIS nor CHAMBERS agreed to give a written statement; but agreed to cooperate with Agents.

DEA Form - 6a
(Jul. 1996)

DEA SENSITIVE
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

1 - Prosecutor