NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0562n.06

No. 18-5136

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 06, 2018
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EDGAR VILLA-CASTANEDA,

    Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

---

BEFORE:    CLAY and GRIFFIN, Circuit Judges; ZOUHARY, District Judge.[*]

**CLAY, Circuit Judge.** Defendant Edgar Villa-Castaneda was convicted of threatening to murder an Assistant United States Attorney ("AUSA") "on account of the performance of [his] official duties" in violation of 18 U.S.C. § 115(a)(1)(B) and (b)(4) and soliciting another inmate to murder the AUSA in violation of 18 U.S.C. § 373. Defendant argues on appeal that the district court erred in denying the motion to suppress his statements to law enforcement officers and abused its discretion in imposing consecutive sentences. For the reasons set forth below, we **AFFIRM** the district court's judgment and sentence.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

**BACKGROUND**

**Procedural History**

On February 2, 2017, a grand jury sitting in the Eastern District of Kentucky indicted Defendant on two counts. Count One charged Defendant with violating 18 U.S.C. § 115(a)(1)(B) and (b)(4) for allegedly threatening to murder then-AUSA Robert Duncan "on account of the performance of his official duties." (R. 1, Indictment, Page ID# 1.) Count Two charged Defendant with violating 18 U.S.C. § 373 for allegedly soliciting another inmate to murder AUSA Duncan. Defendant pleaded not guilty to both counts.

On April 19, 2017, Defendant moved to suppress custodial statements he made to two Federal Bureau of Investigation ("FBI") agents on November 6, 2015. Defendant argued he did not understand the *Miranda* warnings provided to him and therefore did not "knowingly and voluntarily" waive his rights under the Fifth Amendment to the United States Constitution.

On May 12, 2017, the district court held an evidentiary hearing on Defendant's suppression motion. The court denied the motion.

A jury found Defendant guilty on both counts of the Indictment after a two-day trial. A sentencing hearing was held on January 26, 2018. On January 30, 2018, the district court sentenced Defendant to 120 months' imprisonment on Count One and 240 months' imprisonment on Count Two.[1] The court ordered that Defendant serve the sentences consecutively to each other and consecutively to his undischarged federal sentence. On February 5, 2018, Defendant appealed.

---

[1] Defendant's total offense level, combined with his criminal history category, resulted in a guideline imprisonment range of life, but because the statutorily authorized maximum sentences were less than life, the district court instead sentenced him to the statutorily authorized maximum sentence on both counts.

**Factual Background**

Defendant was prosecuted in a large drug trafficking and money laundering case in 2014 and 2015.  Defendant eventually pleaded guilty and entered into a plea agreement.  In September 2015, before sentencing on those charges occurred, the FBI received a letter from the attorney of one of Defendant's cellmates stating that Defendant had offered the cellmate $25,000 to arrange the killing of then-AUSA Robert M. Duncan, Jr.  This prompted the investigation that led to the charges at issue in this case.

Talbert Marshal shared a cell with Defendant at Woodford County Detention Center in Versailles, Kentucky for four or five months.  During this time, Mr. Marshal testified that Defendant revealed to him a "dislike[] [of] Mr. Duncan and [a belief that] Mr. Duncan had it out to really get him."  (R. 90, Trial Transcript, Page ID# 508.)  Defendant told Mr. Marshal that Mr. Duncan "was always down on him . . . for bringing his [Defendant's] 18-year-old son over here and getting him into the selling drugs and how his son was sitting in jail on federal charges looking at 10 years as well, and that Mr. Duncan said he was going to do his best to make sure he never set foot on the street again."  (*Id.*, Page ID# 508–09.)

Eventually, Defendant told Mr. Marshal that "he would like to put a hit out on [Mr. Duncan]."  (*Id.*)  Mr. Marshal told Defendant that he did not know anyone who could perform the hit. Nonetheless, Defendant persisted in discussing a potential hit on Mr. Duncan's life with Mr. Marshal "10 [or] 15 times" after their initial discussion, with these conversations arising as Defendant told Mr. Marshal "how badly he hated Mr. Duncan."  (*Id.*, Page ID# 511.)  Mr. Marshal believed that Defendant was serious about wanting to hire someone to kill Mr. Duncan.  Defendant told Mr. Marshal that he would pay $25,000 to someone who could execute the hit and brought up Mr. Marshal's family in Kentucky as potential candidates.  Defendant further discussed the

particulars of the deal with Mr. Marshal, including how payment would work and the location of the money Defendant would use to pay. Defendant also gave Mr. Marshal the phone number of Defendant's sister, who Defendant said would be involved in the payment. Around September 25, 2015, Mr. Marshal wrote a letter to his attorney about his conversations with Defendant and Defendant's desire to put a hit on Mr. Duncan's life.

Gill Garrett also shared a cell with Defendant and testified to Defendant's dislike of Mr. Duncan, which was to the point where Defendant would "get[] emotional" when Mr. Duncan came up in conversation. (*Id.*, Page ID# 592.) Mr. Garrett testified that Defendant told him on several occasions that he wanted to kill Mr. Duncan. According to Mr. Garrett, Defendant told him that Defendant could give Mr. Garrett $10,000 for help killing Mr. Duncan, which could "help support [Mr. Garrett's girlfriend's] drug habits." (*Id.*, Page ID# 593) Mr. Garrett testified that Defendant told him

> that when [Defendant] talked to the prosecutor, that he looked the prosecutor in the eyes and said, I want to remember your face even if it's 10, 15, 20 years from now. And then [Defendant] went on to say that he could – when he got out of prison that he could come to the courthouse and then shoot the prosecutor with a .22 rifle to be exact with a scope on it. He could run up and shoot him, or else he could do it from a truck that he has.

(*Id.*, Page ID# 594.) Defendant also told Mr. Garrett a plan involving "some type of acid and water inside a container, that you can shake it up and throw it at the prosecutor, and it would kill him." (*Id.*) Mr. Garrett believed Defendant was serious about wanting to kill Mr. Duncan.

Neither Mr. Marshal nor Mr. Garrett speaks Spanish, and their conversations with Defendant were entirely in English.

When Mr. Marshal's attorney communicated the threat to the government, Special Agent John Whitehead of the FBI began investigating Defendant. Special Agent Whitehead conducted unrecorded interviews with Mr. Marshal and other inmates and arranged for monitored

conversations between Mr. Marshal and Defendant. Special Agent Whitehead attempted to record these monitored conversations but neither recording turned out clear enough to hear more than intermittent words being spoken. The district court found, however, that "[a]lthough the precise nature of the conversation is unclear at times . . . it is very clear that the men conversed exclusively in English." (R. 34, Memorandum Opinion and Order on Motion to Suppress, Page ID# 107.)

After investigating the reported threat, Special Agent Whitehead, along with Special Agent Mike VanAelstyn, interviewed Defendant. Special Agent Whitehead read Defendant his *Miranda* rights in English, and Defendant signed an English-language FBI "Advice of Rights" form advising Defendant of his rights and indicating that he understood those rights and nevertheless agreed to speak to the agents without a lawyer present. Neither agent spoke Spanish, and the agents interviewed Defendant in English after Defendant declined an offer to get a translator. Subsequent to signing the form, Defendant admitted to complaining to different inmates about Mr. Duncan and speaking to them about "wanting to harm Mr. Duncan, and offering to pay money . . . to have him harmed." (R. 90, Trial Transcript, Page ID# 557.) Defendant also told Special Agent Whitehead the details of the plan, including where the money for this payment would come from. Defendant admitted that he talked about "having Mr. Duncan killed." (*Id.*, Page ID# 558.) Special Agent Whitehead credited these admissions and did not believe Defendant's statement that he "was just joking" when he made statements about wanting to kill Mr. Duncan. (*Id.*, Page ID# 558–64.)

## DISCUSSION

### I. THE DISTRICT COURT DID NOT ERR IN DENYING DEFENDANT'S MOTION TO SUPPRESS BASED ON *MIRANDA*

#### Standard of Review

In reviewing a district court's decision on a motion to suppress, "the appellate court reviews the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Binford*, 818 F.3d 261, 267 (6th Cir. 2016). This Court "may affirm on any ground supported by the record and may consider trial evidence in addition to evidence considered at the suppression hearing." *Id.* The question of whether a waiver is knowing and intelligent is "a mixed question of law and fact" that is reviewed *de novo*. *Hall v. Beckstrom*, 563 F. App'x 338, 353 (6th Cir. 2014) (quoting *Lott v. Coyle*, 261 F.3d 594, 610 (6th Cir. 2001)). Because the motion was denied below, this Court "review[s] the evidence in the light most likely to support the district court's decision." *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (quoting *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009)).

#### Analysis

The district court did not err in denying Defendant's motion to suppress Defendant's statement because he knowingly and voluntarily waived his *Miranda* rights.

The Fifth Amendment to the United States Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court held that this amendment requires law enforcement to advise a suspect before custodial interrogation that the suspect "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444 (1966). A suspect may waive these rights, but a waiver "must not only be voluntary, but must also constitute a knowing

and intelligent relinquishment or abandonment of a known right or privilege . . . ." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). A waiver is valid "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension . . . ." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). It is settled law that "language difficulties may impair the ability of a person in custody to waive [his *Miranda*] rights in a free and aware manner." *Al-Cholan*, 610 F.3d at 954 (alteration in original) (quoting *United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir. 1985)). This waiver inquiry is conducted "'primarily from the perspective of the police,' such that where '[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] *Miranda* waiver." *Id.* (alterations in original) (quoting *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009) (en banc)).

Defendant argues in the instant case that language difficulties impaired his ability to knowingly and voluntarily waive his rights, and that the district court thus erred in denying his motion to suppress. Defendant received *Miranda* warnings verbally and via a standard FBI Advice of Rights form, and Defendant signed the form acknowledging his understanding of the rights before speaking to the agents. Yet Defendant argues that this waiver was ineffective because his knowledge of English is limited, and the verbal and written explanations were in English.

The district court found that Defendant "*significantly understates* his ability to speak and understand English" and that the government "presented substantial, compelling evidence to establish that [Defendant] had a sufficient understanding of English such that the waiver of his *Miranda* rights was knowing and voluntary." (R. 34, Memorandum and Order on Motion to Suppress, Page ID# 106–07.) The district court also found that Defendant's "claim that he cannot speak or understand English, and that he did not understand the *Miranda* warning, [was] not

credible." (*Id.*, Page ID# 107–08 (alteration in original).) Such "credibility findings are entitled to particular deference, because the district court is in a better position than we to observe a witness's demeanor." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (citing *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003)).

To judge whether these findings were clearly erroneous, this Court must look to the record evidence, and the evidence in this case supports the district court's findings. There was testimony that Defendant spoke only English with Mr. Marshal and other inmates, and that Defendant spoke English with the staff of the detention center as well. The conversations with his cellmates concerned Defendant's desire to kill Mr. Duncan and the particulars of a potential deal to do so, including the amount and method of payment. The evidence as to these conversations suggests Defendant had more than a rudimentary understanding of English.

Further, Defendant had been in the United States since at least 2006 (although perhaps with a temporary return to Mexico), and at one point had a job in a restaurant that involved reading tickets in English. At the suppression hearing, the government presented recordings in which Defendant could be heard conversing in English (although the individual words were not all comprehensible). According to Special Agent Whitehead, Defendant told his interviewers that he understood what they were saying and understood the rights they read to him in English before signing the document. According to Major Susan Boyd, Chief Deputy of the Woodford County Detention Center, Defendant was asked questions pursuant to a "Jail Intake Assessment" form, and the booking officer who filled the form out with Defendant indicated that Defendant understood the questions and did not need a translator.

Defendant testified at the suppression hearing that he could not understand the *Miranda* warnings or read the FBI Advice of Rights form and that he told the agents at one point that he

could not understand them. Nonetheless, the government's evidence suffices to show that the district court did not clearly err in holding that Defendant's knowledge of English was substantially greater than claimed.

The next question is whether the waiver was knowing and intelligent, which is a mixed question of law and fact that this Court reviews *de novo*. *Hall*, 563 F. App'x at 353.

The case most on point is *United States v. Al-Cholan*, 610 F.3d 945 (6th Cir. 2010). This Court in that case affirmed the denial of a motion to suppress where a defendant claimed to have language difficulties. *Id.* at 954. That case included the following evidence as to the defendant's knowledge of English: the defendant "had resided in the United States for twelve years;" he "had passed an English proficiency test and sworn under penalty of perjury that he could speak and understand English;" there had been a brief conversation captured on tape in which the defendant answered "yes" when asked if he spoke English; the defendant had signed a written, English-language *Miranda* waiver; the defendant had completed a medical questionnaire in English "with no difficulties;" and had conversed with the agents in English during the interviews. *Id.* On these facts, this Court upheld the district court's finding that the defendant "understood English sufficiently well to render his *Miranda* waiver voluntary, knowing, and intelligent." *Id.*

When "review[ing] the evidence in the light most likely to support the district court's decision," *id.* (quoting *Adams*, 583 F.3d at 463), the evidence shows the following: Defendant spent a similar length of time in this country (nearly ten years); Defendant expressed understanding of the questions being asked to both the agents who questioned him and the booking agent who completed a detention-center intake form with Defendant; Defendant was recorded on tape speaking in English; and Defendant confessed to the agents in English. Additionally, this Court treats as a finding of fact the district court's determination that Defendant substantially understated

his ability to speak and understand English. Overall, although Defendant did not pass an English proficiency test or swear under penalty of perjury that he could speak and understand English, the similarities in this case to *Al-Cholan* greatly outweigh the differences.

Further, because it is "primarily from the perspective of the police" that a court must weigh the evidence of a defendant's knowledge of English, Defendant's claim must fail. *Id.* (citation omitted). This Court in *Al-Cholan* affirmed the denial of a suppression motion on similar facts because "whether or not [the defendant] truly understood the *Miranda* warnings, the agents certainly had no contemporaneous reason to doubt that he did." *Id.* Likewise, nearly all of the above-discussed evidence was known to the special agents at the time they read Defendant his *Miranda* rights and Defendant agreed to waive those rights. The agents had no reason to suspect that Defendant's knowledge of English was so limited that he would be unable to waive his rights knowingly and intelligently. Thus, just as in *Al-Cholan*, even if Defendant did not truly understand the *Miranda* warnings, it cannot be said that the agents had any "contemporaneous reason to doubt" that Defendant possessed sufficient knowledge of English to understand the *Miranda* warnings and to validly waive his right to remain silent. *See id.*

In arguing that the totality of circumstances shows the waiver was invalid, Defendant relies heavily on *United States v. Garibay*, which concerned a defendant whose lack of language skills— among other facts surrounding his interrogation—convinced the court that the defendant's *Miranda* waiver was not knowing and intelligent. 143 F.3d 534, 539 (9th Cir. 1998). The Ninth Circuit in *Garibay* applied a six-factor test to determine whether the defendant had knowingly and intelligently waived his constitutional rights. *Id.* at 538. Although this Court has never adopted the *Garibay* factors, the factors are instructive, and applying them in this case confirms that the district court did not err in denying Defendant's suppression motion.

> The Ninth Circuit considers the following factors in weighing the totality of circumstances:
>
> (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his rights in his native tongue; (3) whether the defendant appeared to understand his rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system.

*Id.* (citations omitted). The Ninth Circuit in *Garibay* concluded that suppression was proper where "none of these considerations [we]re present." *Id.* By contrast, in this case factors (1), (3), and (6) are certainly met. Defendant signed the FBI's Advice of Rights form. Defendant appeared to understand his rights. And Defendant had prior experience with the criminal justice system such that he would be more likely to understand the import of the *Miranda* warnings even in his non-native language. Factor (5) also weighs in favor of the government, as the agents individually advised Defendant of his rights, spending "approximately three minutes" reading Defendant his rights via the FBI Advice of Rights form and "several minutes" before that getting ready to present the form to him. (R. 90, Trial Transcript, Page ID# 553–54.) Factors (2) and (4) are not met, as Defendant was not advised of his rights in his native Spanish or provided with a translator to assist him. Ultimately, however, these factors are not requirements but are rather meant to "guide our inquiry . . . ." *Garibay*, 143 F.3d at 538. Applying these factors in this case only provides further support to the conclusion that Defendant's waiver was knowing and voluntary.[2]

---

[2] In *Garner v. Mitchell*, discussing *Garibay*, this Court emphasized the findings in that case that "an officer that questioned the defendant was forced to rephrase questions when the defendant 'did not appear to understand.'" 557 F.3d at 265 (quoting *Garibay*, 143 F.3d at 539). This apparent lack of understanding is not present in the instant case, and the absence of this factor likewise distinguishes this case from *United States v. Lopez*. 817 F. Supp. 2d 918, 924 (S.D. Miss. 2011) ("Despite this abundantly apparent language barrier, Matuszewski did not use Spanish when asking Lopez for consent to search the car."). This is not a case with an abundantly apparent language barrier, nor one where the defendant is of below-average intelligence, let alone "borderline retarded with extremely low verbal-English comprehension skills," as was the case in *Garibay*. 143 F.3d at 538.

Defendant's final argument is that the agents acted contrary to Department of Justice ("DOJ") policy by not recording Defendant's interrogation and that this failure should factor into this Court's analysis. Defendant relies on *United States v. Lewis*, which concerned the question of whether a defendant had been read *Miranda* rights at all. 355 F. Supp. 2d 870, 873 (E.D. Mich. 2005). At trial in the instant case, there was conflicting record evidence about what the DOJ policy was and whether there was a policy exception at the time of the interview. Certainly recording interviews is useful for meeting the government's evidentiary burden. But the failure to record in this case is not relevant to the validity of Defendant's waiver, even in our broad-based totality of circumstances analysis.[3] Moreover, even if this Court gave some weight to the failure to record, Defendant's evidence would still be insufficient to overcome the evidence as to the validity of the waiver.

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN IMPOSING CONSECUTIVE SENTENCES

### Standard of Review

"This Court reviews for clear error a district court's findings of fact with respect to its application of the Sentencing Guidelines; conclusions of law, however, are reviewed *de novo.*" *United States v. Ryan*, 407 F. App'x 30, 31 (6th Cir. 2011) (quoting *United States v. Ward,* 506 F.3d 468, 472 (6th Cir. 2007)). A sentence that is "within a properly calculated Guidelines range . . . is entitled to a presumption of reasonableness on review." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)). "Regardless of whether the sentence imposed is inside or outside of the Guidelines range,"

---

[3] Given this Court's emphasis that "[t]he underlying police-regulatory purpose of *Miranda* compels that [the totality of] circumstances be examined . . . primarily from the perspective of the police," *Garner*, 557 F.3d at 263, it is possible to imagine the failure to record in violation of agency policy supporting other evidence of bad faith on the part of police as to their knowledge of a suspect's English comprehension. In that case such evidence would thus be relevant to the waiver issue, but this is not that case.

review of a district court sentencing decision is generally for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court's decision to impose a consecutive or concurrent sentence under § 5G1.3 of the Sentencing Guidelines is also reviewed for abuse of discretion. *United States v. Watford*, 468 F.3d 891, 915 (6th Cir. 2006) (quoting *United States v. Campbell*, 309 F.3d 928, 930 (6th Cir. 2002)).

**Analysis**

The district court did not abuse its discretion in imposing sentences consecutive to each other and to Defendant's undischarged sentence.

Appeal of a district court's sentencing decision involves an inquiry into the decision's procedural and substantive reasonableness. *United States v. Cochrane*, 702 F.3d 334, 343–44 (6th Cir. 2012). This Court first asks whether the district court made any significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Conatser*, 514 F.3d 508, 519–20 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at 51). This Court then asks whether the decision below was substantively unreasonable, which might occur "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Sexton*, 512 F.3d at 332 (quoting *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)). "The substantive reasonableness inquiry 'take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *Cochrane*, 702 F.3d at 345 (alteration in original) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)).

A.      **Procedural Reasonableness**

Defendant concedes that the district court correctly calculated his sentence under the Guidelines and only argues on appeal that the district court erred in imposing consecutive sentences. Defendant alleges error both with respect to the decision to impose the two instant counts consecutively to each other and the decision to impose those counts consecutively to Defendant's undischarged sentence. Although these questions are in some sense distinct, the analyses with respect to the two claims are substantially the same, as will become clear below. Thus, this Court addresses the procedural reasonableness of both determinations together.

Procedural reasonableness involves asking whether the district court adequately considered the applicable factors. *See Conatser*, 514 F.3d at 519–20. Title 18 U.S.C. § 3584(a) addresses both situations at issue in this case—*i.e.*, consecutive sentencing on multiple instant counts or on a combination of instant counts and undischarged sentences—and allows the district court discretion in both situations to impose sentences concurrently or consecutively. Subsection (b) requires the sentencing court to consider the factors set forth in 18 U.S.C § 3553(a), which are as follows:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>> **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such

guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Paragraph (5) instructs courts to consider the Guidelines. With respect to multiple sentences, Section 5G1.3(d) of the Guidelines provides that "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S. Sentencing Guidelines Manual § 5G1.3(d). The application notes to § 5G1.3(d) give five factors to consider in determining whether a concurrent or consecutive sentence is appropriate:

**(A) In General.**--Under subsection (d), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:

**(i)** the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));

**(ii)** the type (*e.g.*, determinate, indeterminate/parolable) and length of the prior undischarged sentence;

**(iii)** the time served on the undischarged sentence and the time likely to be served before release;

**(iv)** the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

**(v)** any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S. Sentencing Guidelines Manual § 5G1.3(d) cmt. n.4(A).[4]

Although it requires some searching through case law, statutes, Guidelines, and commentary on the Guidelines to determine, the procedural reasonableness inquiry in this case is quite simple, as this Court has explained:

> Although the district court was not required to state a specific reason for a consecutive sentence, it was nevertheless obliged to make generally clear the rationale under which it has imposed the consecutive sentence. The district court need not state its rationale explicitly, but may incorporate by reference a discussion of the relevant considerations in another document such as the Presentence Report. The district court may also make clear that its reasons for choosing a substantive sentence and for running two sentences consecutively are the same. What the district court may not do is say nothing at all. When deciding to impose consecutive sentences, we hold that a district court must indicate on the record its rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere. Otherwise, meaningful appellate review becomes impossible.

*Cochrane*, 702 F.3d at 346 (internal citations and quotations omitted). Thus, so long as the district court adequately considered the myriad applicable factors, its decision will not fail to meet the requirements of procedural reasonableness.

The Court in this case need not tarry long on the issue of procedural reasonableness. Defendant concedes that the district court "explained, at length, its reasoning for imposing a fully consecutive sentence," (Appellant's Br. at 32), and Defendant's arguments fit more neatly in the substantive reasonableness inquiry (discussed below). In light of Defendant's concession about

---

[4] These factors relate to sentencing when there is an instant sentence to be imposed and an undischarged term, but these factors bear on the question of whether a consecutive sentence is right for the two instant counts as well, since the ultimate goal is "to achieve a reasonable punishment for the instant offense." U.S. Sentencing Guidelines Manual § 5G1.3(d).

the district court's thoroughness, we need not exhaustively review the district court's analysis with respect to each factor, but the following examples are illustrative: The district court identified the relevant factors in § 3553(a) and those in note 4 of the Guidelines commentary. The district court noted that the § 3553(a) factors did not favor a concurrent sentence since the Defendant had not expressed remorse. With respect to the first, second, and fourth factors under § 3553(a), the district court in its analysis went through each in turn. Although the district court did not individually name each factor, the record makes clear that the district court's review encompassed the various factors. The district court then turned its attention to the factors included in the Guidelines commentary and considered the length of the undischarged sentence and the time likely to be served prior to release. This analysis satisfied procedural reasonableness.

### B.       Substantive Reasonableness

Under procedural reasonableness, this Court reviews the district court's treatment of a laundry list of factors, which includes "[a]ny other circumstance relevant to the determination of an appropriate sentence for the instant offense." U.S. Sentencing Guidelines Manual § 5G1.3(d) cmt. n.4(A)(v). The language in the Guidelines commentary also indicates that the factors relevant to sentencing under § 5G1.3 should be followed "[i]n order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity . . . ." *Id.* at cmt. n.4(A). The presence of these factors in the procedural reasonableness inquiry raises the question of what remains for this Court to review under substantive reasonableness. This Court has in the past, understandably, folded these inquiries together in reviewing consecutive versus concurrent sentences. *See, e.g.*, *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) ("A challenge to a court's decision to impose a consecutive or a concurrent sentence is not easily classified as 'substantive' or 'procedural.' This is so because an evaluation of the substantive reasonableness

of a decision to impose a consecutive sentence depends heavily upon an evaluation of the procedural reasonableness.").

While in most cases combining these inquiries likely will not make a difference, these inquiries are distinct and should be analyzed separately. A district court's sentence might pass procedural reasonableness but fail substantive reasonableness where, for instance, the court considers the proper factors but "gives an unreasonable amount of weight to any pertinent factor." *Sexton*, 512 F.3d at 332 (quoting *Borho*, 485 F.3d at 908).[5] Such cases could rise to the level of substantive unreasonableness, "tak[ing] into account the totality of the circumstances," *Cochrane*, 702 F.3d at 345 (quoting *Bolds*, 511 F.3d at 581), and because of this, the inquiries should be kept separate.

Defendant's claims of substantive unreasonableness in this case are without merit. Defendant's argument is essentially that because the sentence imposed will actually amount to a life sentence given his age, the district court's decision was not substantively reasonable. This argument comes close to being the sort of "mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment outlined in § 3553(a) [which] is insufficient to rebut the presumption of reasonableness." *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006).

The district court's weighing of the factors was reasonable and proper. The district court reasonably weighed factor (2)(A) of § 3553(a), noting, "[t]he seriousness of the offense really cannot be overstated," especially given the identity of Defendant's target. (R. 92, Sentencing

---

[5] This does not mean that this Court is free to second-guess every district court determination, and of course "[v]ery different sentences can be reasonable, because different factors that go into sentencing can be weighed differently." *United States v. Hairston*, 502 F.3d 378, 386 (6th Cir. 2007) (quoting *Borho*, 485 F.3d 904 at 917 (Rogers, J., dissenting)). But neither does this mean that any weighing of the correct factors is reasonable, and substantive reasonableness thus remains an important part of our inquiry.

Hearing Transcript, Page ID# 722.)  Likewise, the district court reasonably weighed factor (2)(B), noting, "[t]he issue of deterrence does not favor a concurrent sentence."  (*Id.*)

Factor (2) of § 3553(a) and its sub-factors alone weigh so strongly in favor of a harsher sentence that this Court could affirm the district court's sentence as substantively reasonable based on those determinations alone.  But this Court need not do so.  The district court also reasonably emphasized Defendant's lack of remorse for his actions.  (*Id.*, Page ID# 721, 724.)  This fact goes to the "characteristics of the defendant" under factor (1) as well as the need "to provide just punishment for the offense" and "protect the public from further crimes of the defendant" under factor (2).  The district court properly gave this fact substantial weight in its analysis.  Finally, the district court reasonably noted, in accordance with factor (4) of § 3553(a), that without the maximum penalties being applied for the two statutes under which Defendant was convicted, the Guidelines would recommend a life sentence.  (*Id.*, Page ID# 722.)  This factor adds to the already-weighty case for consecutive sentences.

It is true that the undischarged sentence had approximately twelve years remaining, but the district court reasonably found that this was not a sufficient reason to make Defendant's sentences either partially or wholly concurrent. (*Id.*, Page ID# 723.)  Nor was it unreasonable for the district court to refuse to impose concurrent sentences based on Defendant's family ties and responsibilities.[6]

For the reasons stated above, this Court **AFFIRMS** the district court's judgment and sentence.

---

[6] The district court, in its analysis, did not comment on the claim Defendant made in his sentencing memorandum that the threats against Mr. Duncan were not as serious because Defendant lacked the means to carry them out.  The district court was not unreasonable in ignoring this very weak argument.